IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

LaMaree Miller,                                                        Case No. 3:06CV7061

       Plaintiff,

      v.                                                            ORDER

L&M Video Productions, Inc., et al.,

       Defendants.

This is a *pro se* suit brought by LaMaree (Marty) Miller, the majority owner of L&M Video Productions, Inc. [L&M Video], against the minority owner, Cornerstone Church, Inc. [Cornerstone].

Plaintiff asserts two employment discrimination claims, race and gender discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and O.R.C § 4112.02(A). He also has a claim for retaliation.

Jurisdiction is proper under 28 U.S.C. §§ 1331, 1367. Pending is defendant's motion for summary judgment [Doc. 43] pursuant to Fed. R. Civ. P. 56. For the following reasons, defendant's motion shall be granted.

**Background**

Miller founded L&M Video in 1995 and served as president and general manager from 1996 until September, 2003. L&M Video was the owner of a broadcasting license for a local television station, WNGT-TV. Miller was also president and general manager of another company he founded, L&M Broadcasting, Inc. [L&M Broadcasting].

Prior to December, 1997, Cornerstone broadcast a sermon program on a Toledo television station. In late 1997, that station notified the church that it would no longer carry its program. Cornerstone sought to use WNGT-TV for its programs, and began loaning money to L&M Video. In the Fall of 2000, Miller and Robert Pitts, Vice President of Cornerstone, agreed that the church could buy the stock of all L&M Video shareholders other than the plaintiff and his wife. Disputes arose and litigation ensued regarding the stock.[1] The parties settled those disputes on September 11, 2003.[2]

As part of the settlement, the parties agreed to enter into a close corporation agreement. Under that agreement, Cornerstone and L&M Broadcasting (of which plaintiff owned sixty percent and his wife owned forty percent) would own L&M Video, and Pitts would be President of L&M Video.

On September 16, 2003, the date of closing for the close corporation agreement, Miller and L&M Video entered into a three-year employment agreement. Under the terms of the agreement, either shareholder could terminate the close corporation agreement if the FCC did not grant approval for the station to operate within 270 days.

At the end of the 2004, Miller received a Form 1099 from Cornerstone for $1,500.

---

[1] *See Vassar, et al. v. L&M Video Productions, Inc., et al.*, Case No. CI0200303189 (Lucas Cty. Ct. Comm. Pleas, filed May 23, 2003) (Cook, J.).

[2] The parties to the settlement agreement are Marty Miller as President of L&M Video, Mary Miller as President of L&M Broadcasting, Marty Miller individually and as a shareholder, Linda Miller individually and as a shareholder, and Robert Pitts as Vice President of Cornerstone.

On January 26, 2005, Cornerstone notified plaintiff by letter that it was terminating the close corporation agreement because FCC approval had not been obtained within the 270 day period. As a result, Miller's three-year employment agreement with L&M Video also terminated.

In February, 2005, L&M Video went into state receivership.[3] L&M Video's receiver re-employed the plaintiff in the position he held before the termination. He remained employed with L&M Video until July 25, 2006.

## Summary Judgment Standard

Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, *supra*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)). A fact is material only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. Rule 56(e)(2) provides:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its

---

[3] *See Teletech, Inc. v. L&M Video Productions, Inc.*, Case No. CI0200501117 (Lucas Cty. Ct. Comm. Pleas, filed Jan. 10, 2005) (Jennings, J.).

3

response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995); *see also United States v. Hodges X-Ray, Inc.*, 759 F.2d 557, 562 (6th Cir. 1985). However, the nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox*, *supra*, 53 F.3d at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, *supra*, 477 U.S. at 322). Accordingly, "the mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, *supra*, 477 U.S. at 52).

Because plaintiff brings this motion *pro se*, I liberally construe his allegations in his favor. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Williams v. Browman*, 981 F.2d 901, 903 (6th Cir. 1992) ("It is well established that a *pro se* pleadings should be construed more liberally than pleadings drafted by lawyers."). I will accept well-pleaded facts as true; however, I "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

### Discussion

Cornerstone asserts several ground for its motion for summary judgment. Its first argument is that L&M Video, not Cornerstone, was Miller's employer. Because a Title VII and O.R.C. §

4112.02(A) suits can only be brought by an employee against his employer, Cornerstone argues plaintiff has no standing to bring this claim.

Second, Cornerstone claims Miller cannot make out a *prima facie* case of employment discrimination based on race or gender because he cannot show that his replacement was either not of his race or gender. Indeed, Cornerstone argues that no one replaced Miller until L&M Video's receiver re-hired him. Cornerstone also contends that Miller cannot show that its grounds for terminating the close corporation agreement were pretextual.

Defendant's final argument is that there is no showing of retaliation.

### 1. Miller Was Not an Employee of Cornerstone

Miller maintains that he was an employee of Cornerstone and alleges his termination was in violation of Title VII of the Civil Rights Act of 1964 and O.R.C. § 4112.02(A). Title VII makes it unlawful for an employer:

> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. §§ 2000e-2(a)(1), (2).

Title VII defines "employee" as "an individual employed by an employer." 42 U.S.C. § 2000e(f).

Under Ohio law, it is unlawful:

> [f]or any employer, because of the race, color, religion, sex, national origin, disability, age, or ancestry of any person to discharge without just cause, to refuse

>to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

O.R.C. § 4112.02(A).

The O.R.C. definition of "employee" is substantially similar to the Title VII definition. O.R.C. § 4112.01.

A person's employment status is a mixed question of law and fact. *Lilley v. BTM Corp.*, 958 F.2d 746, 750 n.1 (6th Cir. 1992). In the absence of a genuine issue of material fact, however, the district court may decide the issue as a matter of law. *Simpson v. Ernst & Young*, 100 F.3d 436, 439 (6th Cir. 1996) (citing *Lilley*, *supra*, 958 F.2d at 750 n.1).

Further, in ascertaining an employee's employment status under Ohio law, it is appropriate to turn for guidance to the Sixth Circuit's Title VII case law on the subject. *Ohio Civ. Rights Comm. v. David Richard Ingram, D.C., Inc.*, 69 Ohio St.3d 89, 95 (1994) (holding federal case law interpreting Title VII to be applicable to cases alleging violations of O.R.C. § 4112).

The proper test to apply in determining whether a party is an employee is the common law agency test set forth in *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322-24 (1992). *Shah v. Deaconess Hosp.*, 355 F.3d 496, 499 (6th Cir. 2004). This analysis requires consideration of:

>1) the hiring party's right to control the manner and means by which the product is accomplished;
>
>2) the skill required by the hired party;
>
>3) the duration of the relationship between the parties;
>
>4) the hiring party's right to assign additional projects;
>
>5) the hired party's discretion over when and how to work;
>
>6) the method of payment;

6

      7) the hired party's role in hiring and paying assistants;

      8) whether the work is part of the hiring party's regular business;

      9) the hired party's employee benefits; and

      10) tax treatment of the hired party's compensation.

*Id.* at 499-500 (citing *Simpson v. Ernst & Young*, 100 F.3d 436, 443 (6th Cir. 1996)).

      This common law test contains "no shorthand formula or magic phrase that can be applied to find the answer . . . all of the incidents of the relationship must be assessed and weighed . . . ." *Darden*, *supra*, 503 U.S. at 324 (citing *NLRB v. United Ins. Co. of America*, 390 U.S. 254, 258 (1968)). Examining the circumstances of this case in light of these factors, Miller was not an employee of Cornerstone.

      My analysis begins with the September, 2003, employment agreement, which unambiguously declared Miller's employer was L&M Video.[4] Miller accepted employment with L&M Video on the terms and conditions of the employment agreement; he had to perform the duties given him by L&M Video. He was not obligated to perform duties assigned by Cornerstone. Miller argues, however, that I must look beyond the agreement to the reality of the relationship between the parties.

      Turning to the *Darden* elements, the crux of the common law agency test is control. Cornerstone did not control Miller's work schedule and it did not exercise significant control over his performance. Even though Pitts served as an officer of L&M Video and Cornerstone at the same time, this alone does not demonstrate Cornerstone had control over plaintiff's employment. Proof

---

      [4] The September 16, 2003, agreement reads: "[L&M] Video desires to employ [Miller], and [Miller] desires to be employed by [L&M] Video."

of some overlapping management is not sufficient to demonstrate that the corporations are the same entity. *See Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 726 (6th Cir. 2007). Miller must demonstrate more than the fact that Pitts was simply an officer of both corporations, and he has not done so. Moreover, in terms of corporate control, L&M Broadcasting (plaintiff's corporation of which he was president and general manager) was the majority owner of L&M Video throughout the close corporation agreement. Cornerstone was never more than a minority shareholder.

Beyond the consideration of control, the more specific *Darden* factors weigh heavily against finding an employment relationship. Miller required significant skill to perform his duties. The relationship under the employment agreement began on September 16, 2003, and terminated on January 26, 2005. Miller had no obligation to perform duties assigned by Cornerstone, and Cornerstone did not have the right to assign Miller additional projects. Miller worked out of the L&M Video business office; defendant did not appear to require plaintiff to work on-site at Cornerstone. Miller had significant discretion over when and how long to work. The work done by Miller was not regular business for Cornerstone. These factors heavily suggest a non-employee status.

Finally, and significantly, plaintiff's tax treatment indicates that he was not Cornerstone's employee. It is undisputed that Cornerstone reported plaintiff's 2004 compensation on a Form 1099, not a W-2. A Form 1099 is used to prepare and file an information return (as opposed to a tax return) to report various types of income other than wages.

In this case, the Form 1099 stated that it was for "nonemployee compensation." Use of this form " typically suggests that the parties were not acting in an employer/employee relationship but rather in an independent-contractor relationship." *Silver v. Statz*, 166 Ohio App.3d 148, 153 (2006).

8

Cornerstone made a one-time payment of $1,5000 to Miller; the church did not pay Miller wages, pay payroll or Social Security taxes, or contribute to unemployment insurance or workers' compensation funds. These facts counsel strongly against finding Miller an employee of Cornerstone.

For the reasons stated above, I find that Miller was not an employee of Cornerstone under the common law. Accordingly, he lacks standing to assert his race and gender discrimination claims.

## 2. Miller Has Not Established a *Prima Facie* Case of Employment Discrimination

Even if Miller could persuasively argue that he was an employee of Cornerstone, he can neither establish a *prima facie* case of employment discrimination nor rebut Cornerstone's legitimate, non-discriminatory reasons for terminating the close corporation agreement.

As Miller has no direct evidence of race or gender discrimination, I analyze his claims under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The burden-shifting framework is a three-step approach. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir. 1998).

First, a plaintiff must establish, by a preponderance of the evidence, a *prima facie* case of discrimination by indirect or circumstantial evidence. *Id.* To do so, a plaintiff must show that he: 1) is a member of the protected class; 2) was subjected to an adverse employment action; 3) was qualified for the position; and 4) was replaced by an employee outside the protected class. *Talley v. Bravo Pitino Restaurant*, 61 F.3d 1241, 1246 (6th Cir. 1995) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992)); *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003).

If an employee establishes a *prima facie* case, the burden shifts to the employer to articulate some legitimate, non-discriminatory reason for the adverse employment action. *Wexler v. White's*

*Fine Furniture, Inc.*, 317 F.3d 564, 574 (6th Cir. 2003). If the employer does so, the burden shifts back to the employee to "rebut[ ] this proffered reason by proving that it was a pretext." *Id.*

Miller does not satisfy the forth element of the *McDonnell Douglas* framework. He failed to produce any evidence that he was replaced by a non-black or female employee. Although Miller testified that he was replaced, he has not brought forth persuasive evidence that a person outside his protected class replaced him.

Miller has not established a *prima facie* case of employment discrimination. Further, Cornerstone's argument that it had a legitimate, non-discriminatory reason for his discharge is persuasive. Plaintiff's employment agreement was terminated due to Cornerstone's termination of the close corporation agreement with L&M Video. The agreement provided that either party could terminate the close corporation agreement, and Cornerstone lawfully exercised this right. Miller has presented insufficient evidence that Cornerstone's stated legitimate, non-discriminatory reason for its actions was pretextual.

### 3. Miller Has Not Established a *Prima Facie* Case of Retaliation

To establish a *prima facie* case of retaliation under Title VII or O.R.C. § 4112.02, plaintiff must demonstrate that 1) he engaged in activity protected under the statute; 2) the exercise of his protected rights was known by defendant; 3) defendant thereafter took adverse employment action against the plaintiff; and 4) a causal connection exists between the protected activity and the adverse employment action. *See Ford v. Gen. Motors Co.*, 305 F.3d 545, 552-53 (6th Cir. 2002); *Thatcher v. Goodwill Industries of Akron*, 117 Ohio App.3d 525, 534-35 (1997). Miller has not provided evidence that he engaged in a protected activity. Accordingly, he has not established a *prima facie* case for a claim of retaliation.

**Conclusion**

For the foregoing reasons, it is hereby

ORDERED THAT defendant Cornerstone Church, Inc.'s motion for summary judgment [Doc. 43] be, and the same is hereby granted.

So ordered.

s/James G. Carr
James G. Carr
Chief Judge
